Tiffany R. Norman (SBN: 239873)
TRN LAW ASSOCIATES
654 Sacramento Street, Second Floor
San Francisco, CA 94111
Telephone: (415) 823-4566
Facsimile: (415) 762-5690

Attorney for Plaintiffs SAMIRA GUCCIONE
and SUSAN SALEHI-HAD

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SAMIRA GUCCIONE and SUSAN SALEHI-HAD,<br><br>          Plaintiff,<br><br>     v.<br><br>JPMORGAN CHASE BANK, N.A., and DOES 1-5<br><br>          Defendants. | CASE NO.  C 14-04587 LB<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT<br><br>Date:    April 2, 2015<br>Time:    9:30 a.m.<br>Place:   Courtroom C, 15th Floor |

Plaintiffs hereby file their opposition to Defendant's Motion to Dismiss as follows.

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1

**TABLE OF CONTENTS**

I. INTRODUCTION...................................................................................5

II. BACKGROUND.................................................................................5

III.  STANDARD OF REVIEW..................................................................6

IV.  LEGAL ARGUMENT..........................................................................7

    a.  UNDER *IQBAL* AND *TWOMBLY*, PLAINTIFFS HAVE STATED FACTS SUFFICIENT TO SUPPORT EACH CAUSE OF ACTION..............................8

    b.  THE LITIGATION PRIVILEGE DOES NOT APPLY TO LEGALLY PROTECTED REQUEST FOR INFORMATION BY PLAINTIFFS..................8

    A.  PLAINTIFFS CORRECTLY ALLEGE BREACH OF CONTRACT....................9

    B.  PLAINTIFFS HAVE ADEQUATELY REQUESTED DECLARATORY RELIEF..................................................................................12

    C.  PLAINTIFFS PROPERLY STATE A CLAIM FOR VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT..............................................13

    D.  PLAINTIFFS PROPERLY PLED THE CLAIM FOR VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTIONS PRACTICES ACT ("RFDCPA")....17

    E.  PLAINTIFFS HAVE STANDING AND HAVE SUFFICIENTLY PLED A CLAIM UNDER BUSINESS & PROFESSIONS CODE SECTION 17200 CLAIM BASED ON CHASE'S UNLAWFUL AND UNFAIR LOAN MODIFICATION PROCESS..................................................................................19

        a.  Unfair Business Practices.................................................20

        b. Unlawful Business Practices.............................................21

    F.  PLAINTIFFS PROPERLY PLED THE CLAIM FOR FINANCIAL ELDER ABUSE..................................................................................21

    G.  PLAINTIFFS HAVE SUFFICIENTLY PLED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS..............................................24

V.   CONCLUSION..................................................................................25

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

2

1

2

# TABLE OF AUTHORITIES

3

**Federal Cases**

4

*Ansari v. Elec. Document Processing Inc.*, 2013 U.S. Dist. LEXIS 124798, at *38-
39 (N.D. Cal. Aug. 28, 2013). ................................................................................. 18

5

6

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ................................................................... 6

7

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ............................. 7

8

*Bell Atlantic Corp. v. Twombly*,  550 U.S. 544 (2007) .................................................... 6

9

*Bell Atlantic Corp. v. Twombly,* 550 U. S. 544 (2009) ................................................... 6

10

*Briscoe v. LaHue*, 460 U.S. 325, 333 (1983) ................................................................ 7

11

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) .............................................................. 6

12

*Davis v. Scheuer*, 468 U.S. 183 (1984) ....................................................................... 6

13

*Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) ............................................ 6

14

*Enesco Corp. v. Price/ Costco, Inc.,* 146 F.3d 1083, 1085 (9th Cir. 1998) ........................ 6

15

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................... 6

16

*Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) ................................... 6

17

*Henderson v. Ocwen Loan Servicing,* 2014 WL 5461955 (N.D. Cal. Oct. 27, 2014)........ 10

18

*Lohse v. Nationstar Mortgage* 2014 WL 5358966 ......................................................... 17

19

*Natividad v. Wells Fargo Bank, N.A.,* 2013 W L 2299601, at *6 (N.D.Cal. May 24,
2013) ...................................................................................................................... 17

20

*Reyes–Aguilar v. Bank of America,* 2014 WL 2153792, *14 (N.D.Cal. March 20,
2014) ...................................................................................................................... 17

21

*Rothman v. US Bank*, 2014 WL 4966907 (N.D. Cal. Oct. 3, 2014)................................. 13

22

*Scheuer v. Rhodes*, 416 U.S. 232,236 (1974) ............................................................. 6

23

*Wilson v. Bank of Am., N.A.,* 2014 U.S. Dist. LEXIS 134208, 29 (E.D. Pa. Sept.
24, 2014) ........................................................................................................... 12, 14

24

25

**State Cases**

26

*Bounds v. Superior Court,* (2014) 229 Cal.App.4th 468.................................................. 11

27

*Caira,* 126 Cal. App.4th 1224 .................................................................................... 12

28

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT

*Christensen v. Super. Court*, 54 Cal. 3d 868, 903 (1991) .................................................. 23

*Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 788 (2010) ...................................................... 18

*First Commercial Mortg. Co. v. Reece,* 89 Cal.App.4th 731, 745 (2001) ............................ 9

*Hackenthal v. Weissbein*, 24 Cal.3d 55 (1979) ................................................................. 7

*Imag v. Ferrar*, 70 Cal. App. 3d 48, 55 (1977). .............................................................. 8

*Kwikset Corp. v. Superior Court* 51 Cal.4th 310, 323 (2011) ............................................. 18

*Lewis v. Bank of America NA* (C.D. Cal., Dec. 18, 2013, CV 13-7717 CAS VBKX)
          2013 WL 7118066, at *3. ...................................................................................... 12

*People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 4th 509, 530
          (1984) .................................................................................................................. 19

*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647 .............................. 20

*Silberg v. Anderson,* 50 Cal.3d 205, 213 (1990) ............................................................. 7

**Federal Statutes and Rules**

12 C.F.R. § 1024.35(e) ....................................................................................................... 13

12 C.F.R. §1024.36(e) ....................................................................................................... 13

12 U.S.C. § 2605(f) .......................................................................................................... 12

12 U.S.C. § 2605(f)(1)(A) .............................................................................................. 12

**State Statutes and Rules**

Cal. Civ.Code § 1788.1 ................................................................................................... 16

Cal. Civ.Code § 1788.13(f) ............................................................................................. 17

Cal. Civ.Code § 1788.17 ................................................................................................. 17

Cal. Civ.Code § 1788.2(c) .............................................................................................. 17

Cal. Civ.Code § 1788.2(d) .............................................................................................. 17

Cal. Code Civ. Proc. § 1060 ............................................................................................ 12

Cal. Welf. & Inst. Code § 15610.30(b) ........................................................................... 22

Cal. Welf. & Inst. Code, § 15610.70 ............................................................................... 22

**Treatises**

1 Witkin, *Summ. Cal. Law,* Contracts § 847 (10th ed.2005) .......................................... 12

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT

# I. INTRODUCTION

JPMorgan Chase Bank, N.A. ("Chase" or "Defendant") demands that Samira Guccione and Susan Salehi-Had ("Plaintiffs") reinstate their loan and become current on their payments they must pay approximately $77,000.00 to Chase for accrued escrow charges for their real estate taxes and insurance. However, Chase is not paying Plaintiffs taxes and insurance. Plaintiffs are.

# II. BACKGROUND

Plaintiffs applied for a loan modification with Chase. Plaintiffs were then solicited by a law firm that advised Plaintiffs to qualify for a loan modification by falling behind on their payments. (First Amended Complaint, ("FAC"), ¶19). This firm had done the same with other borrows, and the firm's practices eventually led the United States Consumer Financial Protection Bureau ("CFPB") to take action against the firm, which resulted in the firm's attorney eventually losing his license.[1]

After Plaintiffs requested a loan modification, Chase created an escrow account and attempted to pay Plaintiff's taxes and insurance, both of which Plaintiffs were already paying. (FAC, ¶10-11, 14). Chase twice attempted to pay Plaintiffs taxes, but Chase's payments were returned by San Mateo County because Plaintiffs had already paid their taxes. (FAC, ¶16, 17, 24). Chase then paid the next two tax payments: one was paid six weeks early (before Plaintiffs had an opportunity to pay), and the second three hours before Plaintiffs paid. (FAC, ¶30). Both payments were made even though Plaintiffs were not late.

Chase also decided to force-place insurance on Plaintiff's home, despite the fact that Plaintiffs already had their own sufficient insurance and was current on premiums. (FAC, ¶12, 14, . In total, Chase paid $21,787.00 for taxes, and $2,152.90 for

---

[1] The Consumer Protection Bureau is an independent agency of the US government responsible for consumer protection in the financial section, including banks, credit unions, and other financial companies.

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

unnecessary insurance. In March 3, 2014,[2] Chase claimed that Plaintiffs owed $99,494.60 for an "escrow shortage." Chase neither defines escrow shortage, nor explains why they have been charging for an escrow shortage since 2011.

In an effort to protect their rights as homeowners, Plaintiffs' counsel requested information regarding their balance from Chase. Pursuant to the Real Estate Settlement Procedure Act, a loan servicer is only to required respond to a qualified written request if it is sent to the correct address. Plaintiffs were unaware of this address because this address is not easy to locate and asked defense counsel for this address. Defense counsel requested that the letter be forwarded to her because Chase was represented by counsel (this is the same reason that Plaintiff mailed the Notice of Errors to defense counsel). Plaintiff requested this information independently though a Qualified Written Request, and not through the settlement or negotiation process. After receiving their balance, Plaintiffs repeatedly contacted Chase to inform them that it was overcharging Plaintiffs by several thousands of dollars. Nevertheless, Chase continued to overcharge Plaintiffs by demanding payment for tax payments previously paid by Plaintiffs. Unable to resolve this issue, Plaintiffs were forced to file the instant action to resolve the issue regarding the amounts owed to begin the road to restoring their credit. At the time this case was filed, the state case was still active. After discussion with Chase's current counsel, Plaintiffs agreed to dismiss the state case without prejudice to focus on the federal case.

## III. STANDARD OF REVIEW

Motions to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure are viewed with disfavor and, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). In deciding a motion to dismiss, the court must accept as true the allegations and draw reasonable inferences in favor of the plaintiff. *Doe v. United*

---

[2] This amount has likely increased

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*States,* 419 F.3d 1058, 1062 (9th Cir. 2005).  Inquiry into the adequacy of the evidence is improper.  *Enesco Corp. v. Price/ Costco, Inc.,* 146 F.3d 1083, 1085 (9th Cir. 1998).  A court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

The motion to dismiss should be denied because the test is whether the facts, as alleged, support *any* valid claim entitling Plaintiffs to relief . . . not necessarily the one intended by Plaintiff.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*,  550 U.S. 544 (2007).  The question presented by a motion to dismiss is not whether the Plaintiff will prevail , but whether the Plaintiff may offer evidence to support the claim. *Scheuer v. Rhodes*, 416 U.S. 232,236 (1974) overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).  *Iqbal* and *Twombly* prescribe a two step process for evaluation of motions to dismiss.  The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Id.*; *Erickson v. Pardus*, 551 U.S. 89 (2007).

"Plausibility," as it is used in *Twombly* and *Iqbal*, does not refer to the likelihood that a pleader will prove the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).  A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# IV. LEGAL ARGUMENT

a. UNDER *IQBAL* AND *TWOMBLY*, PLAINTIFFS HAVE STATED FACTS SUFFICIENT TO SUPPORT EACH CAUSE OF ACTION

Rather than analyze the sufficiency of the elements required for each claim, which, if taken as true and in a light most favorable to Plaintiffs and reasonable inferences to be made there from, Defendant argues its motion to dismiss based on various misstatements of law.  Plaintiff therefore request that this motion be DENIED.

b. THE LITIGATION PRIVILEGE DOES NOT APPLY TO LEGALLY PROTECTED REQUEST FOR INFORMATION BY PLAINTIFFS.

The public policy supporting the affirmative defense of litigation privilege is rooted in the principle that parties engaged in litigation must communicate freely without the fear of an ensuing defamation action and protect parties from pernicious inquiries into the good faith of factual assertions.  *Hackenthal v. Weissbein*, 24 Cal.3d 55 (1979).  The "principal purpose of [the litigation privilege] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  *Silberg v. Anderson,* 50 Cal.3d 205, 213 (1990); *Briscoe v. LaHue*, 460 U.S. 325, 333 (1983) (echoing the policy considerations underlying a common law litigation privilege by stating that, "the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible").  " 'Since the 'external threat of liability is destructive of th[e] fundamental right [of access to the courts] and inconsistent with the effective administration of justice,' courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truthseeking proceedings: judicial, quasi-judicial, legislative and other official proceedings.'  *Silberg*, 50 Cal.3d at 213."  A similar purpose "is to assure utmost freedom of communication between citizens [who file lawsuits] and public authorities whose responsibility is to investigate and remedy wrongdoing."  *Imag v. Ferrar*, 70 Cal. App. 3d 48, 55 (1977).

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Here, the litigation is inapplicable because Plaintiffs had a right to cure their default and request information regarding details of their balance.  In an effort to protect their rights as homeowners, Plaintiffs' counsel sought to request information regarding their balance from Chase directly through a qualified written request.  (FAC, ¶20.)  Pursuant to the Real Estate Settlement Procedure Act, a loan servicer is only to required respond to a qualified written request if it is sent to the correct address.  Plaintiffs were unaware of this address because this address is not easy to locate and asked defense counsel for this address.  Defense counsel requested that the letter be forwarded to her because Chase was represented by counsel (this is the same reason that Plaintiff mailed the Notice of Errors to defense counsel).  Thus, Plaintiff requested this information independently though a Qualified Written Request - not through the settlement or negotiation process – and is therefore not subject to the litigation privilege.

In its Motion to Dismiss, however, Chase tries to misleadingly apply the litigation privilege.  Chase claims that "[o]n October 14, 2014, dissatisfied with the progress of their *negotiations* with Chase's counsel in the State Court Action, Plaintiffs initiated the instant lawsuit against Chase . . . ."(MTD, 3:15-17).  Chase inappropriately equates Plaintiffs' written request for loan information with settlement/mediation.  Chase also fails to mention that it asked Plaintiffs to dismiss the state lawsuit to allow the parties to focus on a federal claim.  Chase now attempts to characterize the entire previous state court lawsuit (which contained 5 causes of action) as privileged.  Chase's sleight of hand trick should not result in motion to dismiss Plaintiffs' claims for to declaratory relief, breach of contract, Section 17200, financial elder abuse, and IIED under these circumstances.[3]  Defendant's arguments amount to a conclusionary statement of law the facts of this case or its motion to dismiss.

---

[3] Chase misquotes Plaintiffs when it states "[d]uring the course of the State Court Action, Plaintiffs' counsel and Chase's counsel discussed the *possibility* of Plaintiffs reinstating their loan." (MTD, 3:6-7, citing to FAC, ¶20.) (emphasis added).  What Plaintiffs stated in their First

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

### A.  **PLAINTIFFS CORRECTLY ALLEGE BREACH OF CONTRACT.**

To allege an action for breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) plaintiff's performance of the contract or excuse for non-performance; (3) defendant's breach of the contract; and (4) resulting damages to plaintiff. *First Commercial Mortg. Co. v. Reece,* 89 Cal.App.4th 731, 745 (2001). Although a deed of trust alone is not a contract, it is evidence of a contract between a borrower and a lender and incorporated into the contract for the benefit of the parties. Here, the promissory note, evidenced by the deed of trust, is the enforceable contract that Chase breached. Chase, as the lender-in-interest and/or servicer of Plaintiffs' deed of trust, is bound by the terms of their deed of trust. Specifically, section 3 of the deed of trust describes funds for escrow items, and how they can be paid. A lender can establish an escrow account "[i]f borrower fails to pay the amount due for an Escrow Item." (Exhibit A, Section 3, pg. 4-5). This is the only way for the lender to correctly make and request funds for the escrow payments under the deed of trust. Moreover, payments for insurance are also covered in Section 5 of the deed of trust. If Borrower maintains none of the coverage described above, Lender may maintain insurance coverage, at Lender's option and borrower's expense." (FAC, Exh. A).

Plaintiffs were current on their tax payments and insurance when Chase sent the "Annual Escrow Statement" to Plaintiffs in April 2011. (FAC, ¶12, Exh. B). During this time, Chase demanded that Plaintiffs pay $1,277.48 in monthly escrow charges to cover a shortfall besides $1,860.00 per month to cover future taxes and insurance, for a total amount due of $3,137, 48 per month. (FAC, ¶12). In April 2011, however, Plaintiffs had no shortfall, meaning they were current on their payments, nor an escrow account in which Chase could request payments to cover future payments on taxes and insurance. (FAC, ¶13) Chase attempted to pay Plaintiff's taxes, but the

---

Amended Complaint, however, was that "[a]fter filing of the lawsuit, Plaintiffs wanted to reinstate their loan." (FAC, ¶20.) Plaintiffs even sent an email to Chase's counsel stating that "[a]s we have stated, if we can determine the reinstatement amount, my clients can and will pay. Until we have a proper breakdown of fees, and amounts, they cannot pay." (FAC, ¶23)

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

county refunded Chase's money.  Chase continued to charge Plaintiff fees for escrow after April 11, 2011. Since 2011, nevertheless, Chase only paid for property taxes twice, once six weeks before they were due and once hours before Plaintiffs attempted to pay them. (FAC, ¶41).  Contrary to Chase's statements, Plaintiffs should only be obligated to repay the amounts that are owed.  Regarding Chase's demand for insurance, Plaintiffs have always had insurance.  Chase charged them twice for insurance payments that Chase made. (FAC, ¶14, 15). Chase continues to force place insurance on Plaintiffs, (FAC, ¶38, Exh. U) even though Chase stated in their response to Plaintiffs NOE that they had cancelled Plaintiffs insurance. (FAC, ¶38, Exh. T, and Exh B of Exh. T.)

Furthermore, in *Henderson v. Ocwen Loan Servicing,* 2014 WL 5461955 (N.D. Cal. Oct. 27, 2014), the borrowers were excused from making payments on towards their arrears because the servicer had improperly barred borrower from making the payments.  In this case, Chase paid $21,787.00 for taxes.  Chase is only entitled to the repayment of the taxes that it paid on Plaintiff's behalf, but has been demanding that Plaintiffs inexplicably pay $99,494.60 to reinstate their loan, thereby preventing Plaintiff from making payments. (FAC, Exh. R). Although Chase is now attempting to shift the blame onto Plaintiffs, claiming that Plaintiffs "do not allege that they made a single payment after April 2011." (MTD, 8:12-13), Plaintiffs are excused for nonperformance because Chase has barred Plaintiffs from making any payments has improperly inflated Plaintiff's monthly payment requirements and is requiring them to pay the inflated escrow fees before Plaintiffs loan is reinstated, thereby precluding Plaintiffs' from resuming to pay monthly payments.  The additional fees and the status of their loan has precluded Plaintiffs from reinstating their loan.  Since they were not current they could not make monthly payments on their loan, which is why they have not made a payment in several years. Further, Plaintiffs concede that they were in fault

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

for not making their payments up to January 2012, the date they offered to reinstate their loan.  Any fault attributed to Plaintiffs ends in January 2012.

Chase's actions have resulted in damages to Plaintiffs continuing to be reported delinquent to the credit bureau which affects their credit score, are being charged late fees, the Notice of Default ("NOD") and Notice of Trustee Sale ("NOTS") are still recorded on their property. As the Court found in *Bounds v. Superior Court,* (2014) 229 Cal.App.4th 468, case law recognizes differing degrees of damages to a property owner's complex "bundle of rights."  *Id.* at p. 328. That bundle includes the rights to possess the property, *to use the property,* to exclude others from the property, and *to dispose of the property by sale* or by gift. Due to the NOD and NOTS being recorded on their property since 2011, Plaintiffs have not been able to use the property, dispose of the property for market rate value, or refinance the property and take advantage of the low interest rates over the past several years.

This Court should, therefore, find Plaintiffs have stated a claim and DENY Defendant's motion to dismiss.

**B. PLAINTIFFS HAVE ADEQUATELY REQUESTED DECLARATORY RELIEF.**

"[A]ny person interested . . . under a contract  . . . may . . . bring an original action . . .  for a declaration of his or her rights and duties" under that contract. Cal. Code Civ. Proc. § 1060; *see also Caira v. Offner,* 126 Cal. App.4th 12, 24, (2005) ("It is elementary that questions relating to the formation of a contract, its validity, its construction and effect, excuses for nonperformance, and termination are proper subjects for declaratory relief.").  The wrongful, unjustified, or unexcused failure to perform under a contract constitutes a breach of that contract. 1 Witkin, *Summ. Cal. Law,* Contracts § 847 (10th ed.2005) (citations omitted).  Plaintiffs have alleged a controversy exists regarding the proper monthly payment amount owed by Plaintiffs to Chase associated with the escrow account. (FAC, ¶46-48).   Plaintiffs ask the court for a

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

12

declaration as to their rights and responsibilities under the deed of trust.  *Id.* ¶ 38, *Caira,* 126 Cal. App.4th 1224. Chase cannot now argue that Plaintiffs do not have a claim for declaratory relief. *Lewis v. Bank of America NA* (C.D. Cal., Dec. 18, 2013, CV 13-7717 CAS VBKX) 2013 WL 7118066, at *3.  This Court should, therefore, find Plaintiffs have stated a claim and DENY Defendant's motion to dismiss.

## C.   PLAINTIFFS PROPERLY STATE A CLAIM FOR VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT.

"A plaintiff claiming a RESPA violation must allege not only a breach of a duty required to be performed under RESPA, but must also show that the breach caused him to suffer damages." 12 U.S.C. § 2605(f); *Wilson v. Bank of Am., N.A.,* 2014 U.S. Dist. LEXIS 134208, 29 (E.D. Pa. Sept. 24, 2014) (internal citations and quotations omitted); 12 U.S.C. § 2605(f)(1)(A).  In response to a NOE, a servicer is required to correct the error or errors identified by the borrower and provide the borrower with a written notification of the correction. Or after conducting a reasonable explanation to provide a written notification that includes a statement that the servicer has determined that no error occurred and a statement of the reason or reasons for this determination 12 C.F.R. § 1024.35(e).

Here, Plaintiffs allege that Chase breached its duty under 12 C.F.R. §1024.35(e)("RESPA") when it failed to correct the overcharges after Plaintiffs sent their Notice of Error ("NOE") dated January 16, 2014 and informed Chase that they were overcharged by $74,846.95.  (FAC, ¶57). Chase neither corrected the error, nor conducted a reasonable investigation. (FAC, ¶58). Chase again violated 12 C.F.R. §1024.36(e) when Plaintiffs sent their NOE letter dated April 23, 2014, and informed Chase that it had erroneously force-placed insurance, despite the fact that there was no lapse in insurance coverage at any point during the life of Plaintiffs' loan.  Plaintiffs once again requested that Chase fix the errors, but Chase neither corrected the error, nor conducted a reasonable investigation. (FAC, ¶59).  This caused an injury to a

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

borrower's credit score which sufficiently constitutes damages under RESPA. *Rothman v. US Bank*, 2014 WL 4966907 (N.D. Cal. Oct. 3, 2014). (Borrower alleged servicers refusal to provide accurate account information worsened his already damaged credit, which he acknowledged was originally damaged by his own default. Since injury to a credit score constitutes damages under RESPA, he adequately acknowledged damages.)

Furthermore, Chase is attempting to address factual issues that are reserved for the trier of fact, and not appropriate at the pleadings stage.  Even so, Chase has not complied with the requirements of 12 C.F.R. section 1024.35(e)(1)(i)( B), despite the four-page letter on March 3, 2014 regarding Plaintiffs claims that they had been overcharged. (MTD, 10:6-15).   That the letter stated that Plaintiffs had been advised of the creation of the escrow account on April 14, 2011 and that they were not supposed to be making tax payments directly. (MTD, 10:6-15).  The Uniform Instrument, which is the deed of trust, requires that the lender or servicer revoke the escrow waiver and provide notice of the revocation to the borrower. (FAC, Exh. A, "The Fannie Mae/Freddie Mac Single-Family Uniform Instrument" includes Section 3 titled "Funds for Escrow Items.")  Here, Chase did not revoke the escrow waiver and provide notice of the revocation.  Chase merely sent Plaintiffs an Annual Escrow Statement, which is a statement sent to all borrowers that have an existing escrow account. If Chase were properly revoking the waiver, Chase should have sent Plaintiffs an Initial Escrow Account statement.  Chase did not properly set up an escrow account. When Chase was investigating the NOE, they should have discovered that the escrow account was set up improperly and corrected the error.

Chase's also argues that it complied with RESPA by explaining Chase's calculation on Plaintiffs' escrow and other loan charges. (MTD, 10:6-15).  This too is specious because under the new rules, Chase cannot merely explain their calculation, their calculation have to be accurate.  Under the old RESPA Qualified Written Request rules, a servicer needed to respond to a borrower's QWR by conducting "an

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT

investigation," and by providing borrower an explanation why the servicer believes the account information is correct. *Wilson v. Bank of Am., N.A.,* 2014 U.S. Dist. LEXIS 134208, 26 (E.D. Pa. Sept. 24, 2014). But the servicer's conclusion could have been erroneous, and it would still escape liability, if its original explanation was plausible. To put it another way, the old RESPA requirements were merely procedural. *Id.* The CFPB servicing rules impose more substantive requirements on servicers. Servicers must now conduct a "reasonable investigation" into a borrower's NOE. *Id.* at 27. "Courts interpreting these new rules have found that a borrower can show an investigation was not reasonable by pointing to errors in servicer's explanation. *Id.* at 27-28.

    In this case, Chase's investigation was not reasonable because it contained too many errors, something that a reasonable investigation prompted by Plaintiffs' letter would have revealed. The first error is the amount of money that Chase charged Plaintiffs. Section 10 of RESPA limits the amount of money Chase may require Plaintiffs to hold in an escrow account for payment of taxes, insurance, etc. http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/rmra/res/respafaq As of April 2011, Chase is charging Plaintiffs $1,277.48 in monthly escrow charges to cover a maximum shortfall in addition to $1,860.00 monthly escrow payments to cover future property taxes and insurance. (FAC, ¶12). This results in a total monthly amount of $3,137.48. For over 12 months, Plaintiffs were obligated to pay Chase $37,649.76 for escrow charges. However, according to Chase's table in their response to the NOE, the only payment Chase made in 2011 was for Property taxes in the amount of $10,893.50 paid on November 11, 2011. (FAC, Exh. R, pg. 3). Since Plaintiffs annual taxes in 2011 were $21,787.00, and their insurance was $898.90, their total fees, if Chase were to pay them, was $22,685.90. Chase was charging them an additional $14,963.86 in fees.

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Even if these additional fees would be defined as a "cushion," the total amount of the cushion can equal up to one-sixth of the total amount of items <u>paid out of the account</u>, or approximately two months of escrow payments. *Id.* Chase has requested more funds than they are illegally entitled to since they only paid out $10,893.50. Chase's demand $14,963.86 is therefore not legal. If Chase had conducted a reasonable investigation, it would have discovered their errors and fixed them.

Moreover, Chase's response to Plaintiffs' NOE indicates that the first time they made a payment was on November 11, 2011. But, Chase sent Plaintiffs an Annual Escrow Statement in April 2011 (seven months earlier), where they stated Plaintiffs had an escrow shortage of $11,609.43. (FAC, ¶12). None of this makes sense, and Chase would have realized their errors if they had conducted a reasonable investigation. They then should have corrected their errors.

In their response to the NOE, Chase indicated that it was charging Plaintiffs $75,554.70 as "accrued in escrow charges to date," Despite the fact that Chase has only paid $23,939.90 for taxes and insurance since 2011. (FAC, ¶34). This is an additional error Chase would have recognized if it conducted a reasonable investigation.

On April 23, 2014, a second NOE was sent to Chase to inform it that Chase had erroneously force-placed insurance, despite there being no lapse in insurance coverage at any point during the life of Plaintiffs' loan. In fact, Chase never requested Plaintiffs provide proof of insurance. (FAC, ¶36). On June 5, 2014, Chase's counsel responded to Plaintiffs' second NOE letter and stated that Plaintiffs failed to provide proof of insurance to Chase.[4] (FAC, ¶37). Symbolic of Chase's mishandling of this case involved Chase providing a copy of a statement for a property located for a property Plaintiff owns in Utah and serviced by Citibank. (FAC, ¶38). This alone demonstrates that Chase did not conduct a reasonable investigation. To make matters worse, Chase

---

[4] Chase did not attach a letter in which they requested proof of insurance coverage.

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

16

claims that it cancelled Plaintiffs force-placed insurance, but continues to pay for insurance. (FAC,¶38, Exh. U.)

In summary, Chase has not conducted a reasonable investigation in their response to either of the NOE letters.  Plaintiffs have not been able to use the property, sell their property for market rate value, or refinance the property and take advantage of the low interest rates over the past several years. All this has lead to Plaintiffs' damages, including continuous stress-inducing debt collection for the elderly Plaintiffs, continued foreclosure proceedings, and the overcharging of fees, and continued damages to their credit score. (FAC, ¶41).  Accordingly, this Court should find Plaintiffs have stated a claim and Defendant's motion to dismiss Plaintiff's request for RESPA claim should be denied.

**E. PLAINTIFFS PROPERLY PLED THE CLAIM FOR VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTIONS PRACTICES ACT ("RFDCPA").**

The RFDCPA was enacted to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ.Code § 1788.1. The RFDCPA incorporates provisions of the FDCPA, providing that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j." Cal. Civ.Code § 1788.17. In addition, it sets forth its own standards governing debt-collection practices, including the standards in Cal. Civ.Code § 1788.13(f) and Cal. Civ.Code § 1788.20(b), *Lohse v. Nationstar Mortgage* (N.D. Cal., Oct. 20, 2014, 14-CV-00514-JCS) 2014 WL 5358966, at *9.  Under the RFDCPA, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ.Code § 1788.2(c). "Debt" is defined as "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person." Cal. Civ.Code § 1788.2(d). *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Chase claims the law is well settled that the RFDCPA's definition of debt collector, but fails to recognize that Chase is a 'debt collector' and Plaintiffs' residential home loan is a 'debt' under the Rosenthal Act." On several occasions, the Northern District Court of California has found that even in cases regarding statutory foreclosure notices, a servicer can be held to be a debt collector when the Plaintiff alleges a Defendant engaged in an activity beyond the statutory mandated actions for non-judicial foreclosure.  In *Natividad v. Wells Fargo Bank, N.A.,* 2013 W L 2299601, at *6 (N.D.Cal. May 24, 2013) "Judge Corley rejected the defendant's assertion that '*any* action related to a nonjudicial foreclosure cannot be considered debt collection.' *Id.* at *8 (emphasis in original).  Rather, she found that 'persons who regularly or principally engage in communications with debtors concerning their default that go beyond the statutorily mandated communications required for foreclosure may be considered debt collectors." *Lohse v. Nationstar Mortgage* 2014 WL 5358966, at 9 citing to *Natividad v. Wells Fargo Bank, N.A.,* 2013 WL 2299601.

Judge Spero adopted Judge Corley's holding in *Reyes–Aguilar v. Bank of America,* 2014 WL 2153792, *14 (N.D.Cal. March 20, 2014) and *Lohse v. Nationstar* 2014 WL 5358966.  The court held in *Lohse*  "[w]here the claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process . . . a remedy may be available under the FDCPA." *Id.* at 9.  The court held the same is true for the RFDCPA. *Id.*

Here, Plaintiffs claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process. (FAC, ¶12) Chase sent several request for debt collection beyond the scope of ordinary foreclosure: (1) Mortgage statement for January 2011; (2) Annual Escrow Statement; (3) Payoff quote from April 19, 2013; and (4) Payoff quote for April 25, 2013.

Next, Chase asserts that "to state a Rosenthal Act claim, a plaintiff must also allege that the defendant violated one of its liability provisions. *See, e.g.*, *Ansari v. Elec.*

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*Document Processing Inc.*, 2013 U.S. Dist. LEXIS 124798, at \*38-39 (N.D. Cal. Aug. 28, 2013)." (MTD, 12:16-18) As Plaintiffs stated above, however, Chase violated provisions of the Act, thus satisfies this element.

As such, this Court should find Plaintiffs have stated a claim, and Defendant's motion to dismiss Plaintiff's Rosenthal Fair Debt Collections Practices Act claim should be denied.

**F. PLAINTIFFS HAVE STANDING AND HAVE SUFFICIENTLY PLED A CLAIM UNDER BUSINESS & PROFESSIONS CODE SECTION 17200 CLAIM.**

The California Supreme Court has held that "'[t]here are innumerable ways in which economic injury from unfair competition may be shown.  A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished . . .'" *Kwikset Corp. v. Superior Court* 51 Cal. 4th 310, 323 (2011).  The California Supreme Court was careful to explain that Proposition 64 "plainly preserved standing for those who had had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices." *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 788 (2010) (holding that the threat of impending foreclosure as a result of alleged unfair business practices was sufficient economic injury to confer standing under UCL). *Segura*, 2014 WL 4798890, at \*8.  A plaintiff has standing under the UCL when he or she has: (1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim.  See *Hall v. Time Inc.*, (2008) 158 Cal.App.4th 847, 854-55.

Plaintiffs are facing impending foreclosure as a result of Chase's unfair debt collections act and refusal to correct the errors, despite Plaintiffs sending two NOE's and requests.  Similar to *Segura*, Plaintiffs have plainly alleged an injury that affected their property interest, and the Notice of Default and Notice of Trustee Sale are still

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

recorded on their property, which makes it nearly impossible to refinance their home and take advantage of the low interest rates.  They also are precluded from selling their house and obtaining the current market rate value. Plaintiffs have a present or future property interest which is diminished.  As such, the Court should find that Plaintiffs have standing to sue under their UCL claim.

### a. Unfair Business Practices

In addition to standing, Plaintiffs have sufficiently pled a claim under section 17200.  "By proscribing 'any unlawful' business practice,' section 17200 "borrows" violations  of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*. (1999) 20 Cal.4th 163, 180.  Conversely, when an action is brought by a consumer against the creditor, as is the case here, a broader definition of the word "unfair" applies than when an action is between direct competitors.  In this context, an "unfair" business practice occurs "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." See *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 4th 509, 530 (1984).  A "practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa.'  *Podolsky v. First Healthcare Corp*. (1996) 50 Cal.App.4th 632, 647."  *Id.,* at 180.

In the instant case, Plaintiffs aver that Chase's practices of setting up an escrow account when they did not have a contractual right to do so was unfair. (FAC, ¶¶49-53.)  It was also unfair to demand, through inaccurate statements, that Plaintiffs pay Chase money to this escrow account when Chase was not making Plaintiffs payments on the taxes and insurance. Chase's continued refusal to provide accurate account information worsened their already damaged credit score and prevented them from reinstating their loan.

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**b. Unlawful Business Practices**

To allege a claim based on the "unlawful" prong, a plaintiff must allege facts to demonstrate that the practice violates an underlying law, or a "borrowed claim." *See People v. McKale,* 25 Cal. 3d 626, 635 (1979). A business practice is "unlawful" under Section 17200 only if it violates an underlying state or federal statute or common law. *Fortaleza v. PNC Fin. Servs. Group, Inc.*, 642 F. Supp. 2d 1012, 1019 (N.D. Cal. 2009). Here, Plaintiffs pled that their RESPA and Rosenthal Act claims, "constituted an unlawful business act or practice." (FAC, ¶ 68.)

Accordingly, Defendant's motion to dismiss Plaintiffs' UCL claim should be DENIED.

G. **PLAINTIFFS PROPERLY PLED THE CLAIM FOR FINANCIAL ELDER ABUSE.**

Welfare and Institutions Code section 15610.30(c) provides that "financial abuse" of an elder occurs when a person or entity takes action to deprive an Elder of "any property right, including by means of an agreement." California Civil Code Section 3345 holds unfair or deceptive practices against senior citizens or disabled persons occurs when the defendant's conduct caused a senior or disabled person to suffer loss or encumbrance of a primary residence.

Plaintiff Susan Salehi-Had is an "elder" as defined by W&IC. (FAC, ¶72). She is 69 and was an elder at the time of the conduct (DOB: September 3, 1946). She holds title to the Property that is the subject of this suit. Plaintiffs allege that Chase's actions regarding its continuing request for monies not owed resulted in the property remaining in foreclosure. This has precluded Mrs. Salehi-Had from refinancing or taking any other actions relating to her home, including selling it for market value. (FAC, ¶75) This constitutes financial elder abuse.

Contrary to Chase's assertions, Plaintiff Salehi-Had was deprived of property. *Bounds v. Superior Court,* (2014) 229 Cal.App.4th 468, a case involving an elderly

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

plaintiff, financial elder abuse can occur even when plaintiff does not lose title to their property, is analogous here. In *Bounds*, the defendant argued that the act can only occur after a transfer of title has occurred.  The court found this "troubling," stating that the:

> Real parties' proposed interpretation of the Act's definition of financial elder abuse is troubling. Under this interpretation, a person or entity who seeks to defraud an elder into transferring title to property, or to obtain title through undue influence, would be immune from the remedies available under the Act until the object of the abuse was achieved—a transfer of title from the elder to the abuser. Only then, after having lost title to the property, could an elder invoke the Act. For several reasons, we decline to take such a narrow view of financial elder abuse.

*Bounds*, 229 Cal.App.4th at p. 480.  The *Bounds* Court found that the seller suffered damages despite retaining title to her property because the sale was not consummated and case law recognizes differing degrees of damages to a property owner's complex "bundle of rights."  *Id.* at p. 328; *Estate of Sigourney* (2001) 93 Cal. App. 4th 593, 604 [That bundle includes the rights to possess the property, *to use the property,* to exclude others from the property, and *to dispose of the property by sale* or by gift.]  *Bounds* explained that the law sought to protect elderly individuals with limited or declining cognitive abilities from overreaching conduct that resulted in a deprivation of their property rights.  *Id.* at 481 ["To require the victim of financial elder abuse to wait to file suit until an agreement obtained through the statutorily proscribed conducts has been performed would not further that goal"]. "Its provisions do not mean that a property right can be taken *only* by a performed agreement." *Id.* at 482.

> The existence of the escrow instructions and lease, and [defendant's] position with respect to them renders it impossible for Bounds to sell or borrow against the property and otherwise exercise the Trust's full rights to use enjoyment of the Property. [Defendant's] have also filed a notice of

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

pending action and are believed to have taken other actions to secure their claimed interest in the property. *Id.* at 483.

In the present case, the NOD and NOTS recorded on the property make it impossible for Plaintiff Ms. Salehi-Had to sell to another buyer for market rate value or borrow against the property, or otherwise exercise the owner's full rights to use and enjoyment of the property, thereby constituting a taking.

Furthermore, Chase argues that Plaintiffs have failed to allege that Chase acted with an intent to defraud Plaintiff. Chase cites to Welfare and Institutions Code section 15610.30(a)(1) and cases from 2013. "Property is taken for 'wrongful use' if 'the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.' " Cal.Welf. & Inst. Code § 15610.30(b). But, Chase is citing to the wrong undue influence. In 2013, the Legislature amended section 15610.30, subdivision (a)(3) to refer, instead, to a broader definition of undue influence found in the newly enacted section 15610.70. This amendment took effect on January 1, 2014. Plaintiffs NOE letters were sent after the amendment came into effect. The amendment no longer requires the Plaintiff to demonstrate that Chase acted with willful intent, or took the property for a wrongful use. Welf. & Inst. Code, § 15610.70.

Additionally, the letters from Chase address the case *Guccione v. JPMorgan Chase Bank* matter, Chase responded to both owners, not only Plaintiff Samira Guccione's behalf as Chase now contends. (FAC, Exh. R and T). Further, each and every statement that Chase has sent to Plaintiffs contains both of Plaintiffs names since they are both on the loan. (See for example FAC, Exh. M ,N, O). And in fact, Chase knows the age of Plaintiffs since it obtained a copy of their driver's license when it gave Plaintiffs the loan.

Lastly, Chase argues that "Plaintiffs' elder abuse claim appears to be based on the discussions that took place from January 2012 to June 2014 regarding reinstatement of the loan, which occurred between Chase's and Plaintiffs' counsel. *See, supra,* Section II.C. These discussions simply reflect that the parties disputed the

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

amount of money that Plaintiffs owed on the escrow account, not any bad intent. (*See* FAC, ¶¶ 20-40.)" (MTD, 17:20-24) As stated above, Plaintiffs were not *negotiating* or discussing with Chase regarding a reinstatement amount.  Plaintiffs were asking for a correct amount in order to reinstate their loan, become current, and start making their mortgage payments and rebuilding their credit.  For the foregoing reasons, this Court should find Plaintiffs have stated a claim and Defendant's motion to dismiss Plaintiff's Financial Elder Abuse claim should be denied.

## H. PLAINTIFFS HAVE SUFFICIENTLY PLED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To state a claim for intentional infliction of emotional distress, a plaintiff must assert facts indicating: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Super. Court*, 54 Cal. 3d 868, 903 (1991).

Chase is the servicer of Plaintiffs loan. As a servicer, it is Chase's duty to provide account information, correctly set up escrow accounts, request the proper monies to be paid on the loan, and fix errors that are brought to their attention.  Chase, however, did none of these things. Any civilized person or would be outraged by Chase's conduct and, Chase knew, or should have known, that their conduct had a probability of causing emotional distress. Especially since Plaintiffs were informing Chase of their errors since 2012. Plaintiffs have been suffering severe emotional distress by their continuous request for assistance from Chase, and Chase's refusal. Their credit is continuing to be negatively impacted by Chase's actions and Plaintiffs are unable to refinance or sell their home for market rate value. The cause of Plaintiffs distress is Chase's actions. Accordingly, Defendant's motion to dismiss Plaintiffs' emotional distress claim should be DENIED.

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# V.   CONCLUSION

Plaintiffs pled sufficient facts to support the elements of their claims to entitle them to relief. For all of the foregoing reasons, Plaintiffs request that the Court overrule Defendant's Motion to Dismiss and require that Defendant file its answer.

If, however, a complaint does not state a cause of action, but there is a reasonable possibility that the defect can be cured by amendment, leave to amend must be granted. Because Defendant cites no authority to support its argument that leave to amend should be denied under these circumstances, and because none of Plaintiffs' claims are fatally flawed on the face of the pleadings, should the Court grant any portion of Defendant's Motion to Dismiss, Plaintiffs request leave to amend the Complaint to correct any defects found by the Court.

March 5, 2015                          /s/ Tiffany R. Norman

                                       Tiffany R. Norman
                                       Attorney for Plaintiffs
                                       SAMIRA GUCCIONE and SUSAN
                                       SALEHI-HAD

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

25